First case is Zachariah Sharif versus Attorney General, Mr. Daniels. Before I get going, could you tell us how your client pronounces his name? Zachariah Sharif. Oh, it's Sharif. Okay. Yeah, Sharif. Good afternoon. May it please the court. Benjamin Daniels from Wigan and Dana LLP and the Yale Appellate Litigation Project. On behalf of Zachariah Sharif, I'd like to request five minutes of rebuttal. Granted. Thank you. Your Honors, this case involves a man who is at most six months shy of being a U.S. citizen. He's got a daughter in the country. His family's here. His entire life has been built in the United States. And the only reason that he's been ordered removed is because a single member of the BIA, in an unpublished decision, decided that the Pennsylvania theft by deception statute is a CIMT. And it made a mistake when it did that. Although the theft by deception statute uses buzzwords like deception, the Pennsylvania courts have expanded the statute beyond the bounds of what the BIA have traditionally considered to be fraud under the CIMT statute to include things like de minimis takings, failures to act, deprivations with intent to repay, and temporary takings. The BIA, in case after case, have found that those acts to be not sufficient to constitute a crime involving moral turpitude. And yet the Pennsylvania statute covers all of these. Well, let's start with the following proposition. Tell me what you think of it. So if I said that our case law supports a finding that the conviction for theft by deception under 3922 is one that involves fraud, if we were to find that theft by deception is a fraud crime, there are several cases that establish that fraud crimes are CIMTs. You might disagree with that, the theft by deception under fraud, but take that as a given for a moment. Given our jurisprudence on the subject, isn't a petitioner sufficiently forewarned that the statutory consequence of their conviction for fraud crimes is removal under 1227? I would say, Your Honor, that under 3922A, the theft by deception statute, there are crimes that are punishable that would not be considered under the fraud statute and there would not be sufficient warning to a petitioner. For example, de minimis takings is the best example, I think, that we have in our briefings. And under Diaz-Lizarraga, excuse the pronunciation there, the BIA charted a history in that decision of how the BIA has considered de minimis takings not to be a CIMT. Counsel, my concern, though, is right now you're focusing on the amount of the taking or the time of the taking, but I take the board to be drawing a different line based on whether there was a fraudulent or deceptive intent or method here, regardless of how much money there is. The cases you're citing are just theft cases and this is not just an ordinary theft statute. I understand what you're saying, Your Honor, but I respectfully disagree. Under this circuit's precedent, the test for being a CIMT is if the conduct that it is inherently base, vile, or depraved, contrary to the accepted rules of morality. And you disagree that if fraud or deception is at the heart of a crime, then we've decided that makes it inherently base. You're just trying to distinguish this statute as not necessarily involving fraud or deception? I understand that there are cases out there that say that fraud, as defined by the BIA, is inherently depraved and base. However, I think that the theft by deception, as described in the Pennsylvania statute, there's a mismatch between how the BIA has defined fraud under CIMT and how the Pennsylvania statute has punished theft by deception. That's the distinction that we're trying to draw. I'm sorry? Why is punishment relevant? Well, I think that the BIA has, in the theft cases that we were talking about, has drawn the line between something where someone has been permanently trying to deprive someone of their property or money or such. And so, for example, the Pennsylvania statute, as written, and maybe not as applied, but as written for sure, there are many de minimis crimes that could be punished as theft by deception. For example, if a teenager walked into a candy store and said to the clerk, hey, look over there, and grabbed a candy bar. Let me beg your pardon and just stop you for a second, because I think you're getting off of the distinction. I want to put punishment over there, so I want you to tell me why it comes into the conversation. And then if we can get rid of that, then I think we can get back to what's troubling us. So I think that putting punishment aside, and it's not the amount of punishment, it's the amount of the taking that's occurring. So I think that there's a distinction between the punishment and the amount of the taking. I think society as a general matter, your honor, would not see a child stealing a candy bar by pointing the clerk or distracting a clerk and stealing a candy bar as inherently based, vile, moral, or depraved. Yet that could be fall as a whole juvenile justice system to address crimes by children. So I'm not sure how that helps you. I misspoke. Can we stick with adults? I misspoke. An 18-year-old that steals a candy bar from a candy store. So you want to say whether theft is inherently base depends upon the amount of the theft or the degree of sophistication of the thief? It's the degree of deprivation. But that's not what Diaz-Lazaranda, how he pronounced it. That's not where that case goes, right? I mean, we're not drawing that distinction. The Diaz-Lazaranda case talks about the distinction between de minimis. They adhere to the idea that a de minimis taking is not a deprivation. It says that a temporary taking, though, it diverges from its prior precedent that a temporary taking, meaning a taking where you're withholding something from somebody and then returning it and thereby diminishing its value. That's where Diaz-Lazaranda goes. But it does continue to adhere to the idea that a de minimis taking is not a crime involving moral turpitude. All right. But where do you think the government goes wrong in asserting that fraud or deception makes something a CIMT? What's wrong with their reasoning or analysis? I would say, Your Honor, there's two problems with it. First, that Pennsylvania statute does not fall under the BIA's definition of fraud for the reasons that we lay out in our brief. And the second reason, which... Are we both? And then walk me through the first one. Absolutely. The second reason is the void for vagueness that we raised in our brief. And I understand that there's the new decision that Judge Greenaway issued a week ago about... Yeah. Thank you. So, but the first one is that we think that fraud under the Pennsylvania statute, which is not a fraud statute. It doesn't include the definition and the model penal code. For example, the model penal code includes the definition of depriving somebody. The word deprive appears in many Pennsylvania statutes. It does not appear in the theft by deception statute. The deprivation that's defined in the Pennsylvania statutory scheme, which is in 3902, I believe, is talking about permanent or long-term takings of a certain amount. The theft by deception statute does not incorporate that definition. And so, therefore, we think that on that ground alone, it falls outside of the BIA's traditional definition of fraud under the CIMT statute. If we can just go back to Diaz-Lazaraga, right? Yes. The specific language, putting aside permanently, because it's oral language, right? Either permanently or under circumstances where the owner's property rights are substantially eroded. Now, that doesn't draw the distinction, I think, where you'd like it to be drawn with this notion of de minimis. You can have something that's not great in value, monetarily or otherwise, but if the ambit of the statute and the theft by deception and the fraud come together, and that, I think, is the problematic part for you to deal with. Well, I have two responses to that, Your Honor. First of all, no court that's addressed the issue has found Diaz-Lazaraga's definition to be retroactive. And the BIA has long held that temporary takings, all the way back to McKinney, I mean, Diaz-Lazaraga itself recognized that it was departing from its prior precedent and Mr. Sharif was arrested and convicted before Diaz-Lazaraga was decided. Isn't that only an issue if we determine that Mr. Sharif's conviction is not a fraud crime? I don't believe that's true, Your Honor. The temporary taking doctrine, I think, is the same, comes down to the same thing as the de minimis in many ways. For example, in Commonwealth versus Grief, there was a decision where there was the temporary taking with the intent to repay, which was found to be a conviction under the Pennsylvania theft by deception statute. However, it was not, that would not qualify as a CIMT under the BIA's precedent leading up to Diaz-Lazaraga. But Grief isn't good for you, right? Because Grief says that the gravamen of theft by deception is the fraudulent taking of property of others. So isn't that, that's not good, right? So it's, yeah, so I guess you were trying to hold on to one part of Grief, but that's the essential, the essence of Grief, and that leads us to the same place. Well, I would say, Your Honor, in response to that, is that Diaz-Lazaraga was a departure from prior BIA precedent, which said that a temporary taking, even, it doesn't specify whether it has to be under any circumstance, but a temporary taking is not a crime involving moral turpitude. Now, that's an outdated view and the BIA's view as of Diaz-Lazaraga, and I believe that was 2016. But before that, when Mr. Sharif was convicted under the Pennsylvania statute, he could be punished for a temporary taking, even if he had the intent to repay, and yet still face, and he would not be guilty of a CIMT under the precedent that we cited in our brief. Do you have any precedent in which a crime involving fraud or deception was held not to be a CIMT? I don't have a case that I can point to at the moment, Your Honor, but under the categorical approach, it's not, we don't have to show an actual application that is, and that's in the Hernandez-Cruz case that this court held, that we don't have to show an actual application. It's got to be the possibility of conviction for a non-turpitudinous conduct, however remote, is sufficient to avoid removal. Now, I see my time's up, but the last point I would make is that we would say that the conviction under the theft by deception statute, there's a mismatch between what the BIA has traditionally, and the common law talks about as fraud, and what is punishable under the theft by deception statute. Tell me, on the void for vagueness argument, tell me why Jordan isn't dispositive. Well, I think that the law has evolved significantly since Jordan, and we laid this out in our brief. The whole law has, right? Right. Many things. As I understood the upshot of your argument in your brief, in answer to Judge Greenaway's question, is Jordan's old. I think that's part of it, but I think it's also that the statutory scheme has changed significantly since Jordan. When Jordan was enacted, there were only a few crimes that were considered a crime involving moral turpitude. It was a limited amount of jurisprudence, and now the immigration complex has exploded and incorporated a lot more crimes that have made it even more vague and more difficult to apply. There are some things that age doesn't affect, right? So, if Jordan said fraud is a CIMT, and that's what we've been discussing, then the question is, despite the age, and some things that are older are better. We know that from experience. How do we untangle ourselves from Jordan despite the age? What I think is, the age is a factor in this, and it's not because of just age. I think that it has not weathered well, and Judge Posner- I mean, there are statutory repeals, right? But you haven't really given us one, have you? I mean, what's the statutory language you want to hang your hat on to show that Congress went in a different direction than Jordan? I don't have statutory language that Congress has gone in a different direction, but I think that the Supreme Court, if asked to- We've got to let the court do that, though. Rodriguez de Quijas, it's their prerogative to overrule Jordan, it's not ours. I think that's true in some instances. However, I think it is incumbent on this court, if they believe the Supreme Court is going to go in a different direction, and there are many instances throughout the case law where the precedent in the Supreme Court has not aged well, and the circuit courts have recognized that through hints in decisions or evolution through the circuit courts, that the court is going to go in a different direction, and I think this is one of those cases. I don't like tea, myself. I'm sorry? No, tea leaves. Thank you, Mr. Daniels. We'll hear you on rebuttal. Mr. Robbins? May it please the court. My name is Jonathan Robbins. I'm here on behalf of the respondent to the Attorney General. Good afternoon to all of you. As you've just discussed with my colleague, the key issue in this case is whether a petitioner's time involving moral turpitude, and the board found that it was, and the reason the board found that it was, is because the conduct punishable under this statute is akin to fraud. The court, the board followed the wrong, the board applied the, it viewed the statute as divisible. It focused on a one. Aren't these different means rather than elements, and so doesn't the board's whole analysis fall? No, Your Honor. That's getting to something that wasn't really discussed here about whether the categorical approach can start at the fact of conviction. If you look at the notice to appear on page 412 of the record, the government charged in the notice to appear petitioner with the section, the specific section 3922A1. That's the specific subsection at issue. If you look at page 315 of the record, petitioner in the phase of proceedings where he was making the initial admissions admitted that allegation that he had been convicted of A1. So he admitted that to the immigration judge. Now, the government thinks that a categorical approach from the fact of conviction is appropriate given that that's exactly what the Supreme Court did in Moncrief against Holder. In Moncrief against Holder, the Supreme Court was looking at an individual who had pled guilty to possessing a particular drug, and the statute said that, the statute was laid out so that he could be punished for possessing, distributing, administering a whole bunch of different types of ways of committing that crime. And the Supreme Court jumped straight into the categorical approach, didn't perform a divisibility analysis, didn't do anything of that nature. And so we think that it's perfectly reasonable for the immigration judge to have done the same thing here. I mean, at the end of the day, there was no dispute, and petitioner admitted that he had been convicted of that subsection. And so we think it was reasonable for the immigration judge to look at that subsection instead of other subsections which weren't relevant. Now, at the end of the day, if you don't agree with us that the Supreme Court allows them to do that, it doesn't really matter in this case, because, well, for two reasons. First of all, the statute is divisible. If you look at the way it's charged in all the criminal documents in this case, you're allowed to take a peek at the documents under the Supreme Court's law, and we see that it was charged as its own, he was only charged with A1, not 3922A in the larger subsection of the statute. Well, what are the various elements of the crime of theft by deception covered under 3922A? I mean, I understand you made the argument in your brief that it is divisible, but what are the elements of the crime? Well, the elements of the crime as set forth, and the board specifically has pointed to the Pennsylvania state law on this, you have to establish not only the presence of a false impression, but the reliance of that impression by the victim. So you do have to have that element in there which makes this a fraud crime. You mentioned that the court in Commonwealth Against Grief, the Pennsylvania state court, that's the case where they said that the gravamen of this crime is the fraudulent taking of property. They also point out in that case that the intent of the mens rea of this statute is intent to defraud. So you do have to make that showing. If you were to dig really deep and go into the jury instructions on this case, you'll see that there are separate jury instructions for each different subsection. So 1, 2, and 3 of 3922A all have different jury instructions, which the courts have held are a pretty good indicator that they're separate elements as opposed to mens. But even if you didn't agree with that, even if you thought that it wasn't divisible, it's really harmless error by the agency anyway because this entire statute is one that punishes conduct akin to fraud. So even if the government lost on either of those two issues, the entire statute is still bottomed on fraud and deceit. And the board correctly pointed to the Pennsylvania state law, which said just that. Again, not to reiterate too much, but the courts have held that the gravamen of this crime is fraud. Again, the mens rea is intent to defraud. If the state law wasn't enough, this court has already examined it in Nugent against Ashcroft and said that this case is bottomed on fraud and deceit. And in doing so, the court specifically talked about fraud and deception with respect to the statute and noted that in this case, deceit is a species of fraud. And so we're not looking at the type of deceit that would implicate just simply lying, right? The victim has to rely on the deceit. And that's what brings this within the gamut of the fraud crimes, which have universally been recognized to be CIMTs. So our sister courts have held that Diaz-Lazaraga doesn't apply, or the rule there doesn't apply retroactively. How is it that we can come to a different result? Well, that whole strain of argument, the board said Diaz-Lazaraga wasn't applicable. That whole line of argument has to do with theft offenses. But the board pointed out that this species of theft, theft by deception, is an inherently fraudulent crime. So it didn't have to go down the road. There's a different line of cases as to how you determine whether a theft offense is a CIMT. But because this is a specific species of theft in which fraud adheres, it didn't have to go down the issue of whether there was a permanent taking or a temporary taking. So Petitioner is attempting to conflate those two analyses, the theft and the fraud, because it's so well established that fraud crimes are crimes involving moral turpitude. It's really the only avenue that he has. The problem is he can't get away from this court's law in Nugent, and he can't get away from the Pennsylvania state law that says that this is a fraudulent conduct that's punished categorically under the statute. And that's really so Diaz-Lazaraga isn't really applicable here. And the board specifically noted that. Now, Petitioner has made a lot about the notion of intent to repay. But the board correctly pointed out that intent to repay doesn't really help him here. First of all, when you think about the larger picture and how fraud is universally recognized as a CIMT, I can't think of a situation where intent to repay is a defense to fraud. And that would mean that if his argument were valid, that all these fraud crimes which have been recognized to be CIMTs wouldn't be CIMTs. At the end of the day, intent to repay doesn't change the fact that you've committed the fraud. The board also noted that the offense is complete when the deception is communicated to the owner. So that's where it stops. So an intent to repay doesn't change the fact that a fraud occurred. So if I go to a bank and I defraud them into giving me a loan, the fact that I might later repay the loan doesn't change the fact that I defrauded the bank. So this notion that the intent to repay helps him in this case I don't think carries a lot of weight. I wanted to ask you a question on deference. One point that you made was that this is a single judge decision. And you argue that because it's a single judge, non-precedential BIA decision that relies on a published board precedent to support its rationale that it should be afforded deference. And I need some help as to where that notion emanates. The only point that I was making, and the reason it was in a footnote, is because I don't think it's actually applicable here. When the board relies on its own published precedent in a single member decision, if it's relying on that precedent, to the extent that it relies on that precedent, it should be afforded deference. I don't think the board actually relies on its own precedent in Diaz-Lizarraga here. I think they specifically go past it. They do rely to some extent on case law involving theft and deception like matter of, I think it's Gerardo and matter of Al Arcon. But at the end of the day, when I look at this board's decision, what it's really relying on is the Pennsylvania state law that has said these are the elements of the offense. It categorically punishes conduct that is inherently fraudulent. To the extent that it's relying on that. How do we know that Pennsylvania says these are elements? I thought Commonwealth v. Joy said that these are means, specifically at page 1291 in that opinion. I'm not sure. The board cites the Commonwealth v. Joy for the proposition that the person has to intentionally obtain the victim's property through deceptive conduct. In other words, it has the intent to defraud. But I don't remember that case saying that sections 1, 2, and 3 are alternative means. Well, it says that there are three alternative kinds of intentional conduct. That sounds like means language, not elements language. Well, in fairness, I don't think Commonwealth v. Joy was actually conducting an analysis post-Mathis as to whether these were elements or means. That's an entire line of sort of analysis that is, I believe, predated Joy. As I understand your initial argument, all that's beside the point. Because rather than engage in the sort of least culpable conduct provided by the statute, you're going back to the sort of what we've historically called the shepherd documents to say, just we don't have to question which subsection this person was charged under because it's all right there. The colloquy indicates that he admitted to A1. It's an A1 case. Don't concern ourselves with A2 or A3. We think that's the correct approach, given what the – Do you have any cases that say that? Well, Moncrief is the case that we rely on. Moncrief. It's a relatively sort of new issue. I was going to say, why isn't there circuit authority to that effect? Well, I think because it's partly relatively new. I think if you go into the – I can't think of any cases' names off the top of my head, but I think if you go into – if you research the issue, you'll see that there's issues where things have been admitted to a judge, and the courts have found that they don't have to look under what's underlying those admissions because the whole point of admissions is to narrow the issues for the parties. So when you have a fact of conviction here that's specifically admitted by the petitioner at the hearing, it's perfectly reasonable for the judge to say, okay, the issue's been narrowed to that. That's what I'm going to analyze. Now, again, the government has the alternative argument here as to divisibility and to the fact that the entire statute even – You're saying even if we have to look at 2 and 3, the least culpable conduct of A3 is still fraud and fraud is a CIMT. Exactly. Because 3 gets it really at concealment. They talk about failing to correct a false impression, but that's part of the definition of fraud, right? Fraud is the misrepresentation of fact or the concealment of a material fact. And so – And why doesn't Mathis change the analysis? Assume that you were correct as of a few years ago that we could just look at A1 and – The sort of vexing thing about the categorical approach you probably know as well as everybody here is to what do we apply the categorical approach? Is it to the statute at large, which subsection? Your argument is apply the categorical approach to A1 because we know this is an A1 conviction. You don't look at the way the crime was convicted, but you look at A1 categorically, correct? Yeah. But why did Mathis change that? Well, because the Supreme Court didn't – Moncrief came before Mathis, but Mathis didn't say that it had erred in Moncrief by failing to apply a modified categorical approach. If you remember Moncrief, the court did not perform a divisibility analysis. It didn't look at elements or means. It just simply said he pled guilty to this. We know that. We're going to start the categorical approach here. Now, Petitioner pointed actually in his reply brief, and he said that in a subsequent Supreme Court case in Malouli, there's a footnote which the Supreme Court clarified that it was applying the modified categorical approach in Moncrief. But that's not what the footnote says. It doesn't say that it clarified it. If you look at the Penn site of that footnote, it's citing just to the – where it's talking in the decision about the general framework for the categorical and the modified categorical approach. So it's just citing for a general proposition of law. It's not clarifying. So I think in the absence of any clarification, we have to go with what the Supreme Court said it was doing, which was applying the modified categorical approach. And Moncrief postdated a lot of law on the modified categorical approach. So it's not like the court didn't know what the modified categorical approach was when it was doing that case. But they said they were applying the categorical approach. So given that the Supreme Court did it, we think that it was perfectly reasonable for the immigration judge and the board to do the same thing in this case. But isn't it also true, though, the way this was presented to the agency was rather vague? I seem to recall a slash, you know. In this area, the court applies the modified slash categorical approach. There wasn't really a clear presentation, as I read it, to the agency as to which of the two was supposed to be applied. It was sort of all jumbled together, was it not? That's fair. But what wasn't jumbled was that petitioner admitted the allegation that he had been convicted of A1 once it was in the notice to appear. And I – And the reason I raise the point is I'm a little sensitive to, you know, this court throwing the flag against the agency saying you applied the wrong approach when both parties sort of threw it in a jumbled way, rather than one party insisting you apply the modified, the other the categorical. It just didn't seem to be presented in a clean way to the agency. I think that's fair. I mean, I think there's a lot of confusion on these cases, particularly down below, as they're struggling to – I mean, I can barely get my head wrapped around some of these cases. They're quite difficult. But at the end of the day, I think the board did the right thing here. And even if you disagree, the alternatives still lead to the same conclusion, because the statute's divisible and because even if you look at the statute in its entirety, sections two and three, those also encompass fraudulent conduct. Earlier you mentioned harmless error. But, you know, Chenery is a strong presumption. We normally don't fix the board's mistakes for it. Why would this be the fit within the narrow harmless error exception we've recognized? Well, I'd have to double-check this. But I believe one of the established exceptions to Chenery is futility. So I believe it would be futile to send back, because the board does cite to the Pennsylvania cases that talk about this being fraudulent conduct, and those cases all deal with one, two, and three, not just one. So all the cases it relies on are specifically talking about the statute in its entirety. This court's decision in Nugent was examining sections one, two, and three when it determined that the case was bottomed on fraud and deceit. So we're not supposed to remand for things that are foregone conclusions. And so that would seem to be a foregone conclusion, given the state of this court's law and the state of the Pennsylvania state law. So I see I have 24 seconds left. I want to just briefly touch on the void for vagueness issue. I don't want to harp on it too much, because it sounds like your honors understand that it's foreclosed by a Supreme Court precedent. I know that Petitioner is making the case that this is old law, and there is some validity to that. It's not an off-the-rails argument. There are judges in other circuits that have noted that this is old law. But that's something for the Supreme Court to deal with, not for this court to overturn the Supreme Court. And I would say that, at least with respect to the definition of crime involved in moral turpitude since 2018, when this court issued Moreno, I would say that the definition hasn't changed significantly in that one year. So it wouldn't justify this court overturning its own precedent. Unless there are any further questions. Thank you, Mr. Robbins. Thank you very much for your time, your honors. Mr. Daniels reserved five minutes for Robbins. Thank you, your honor. I'd like to just start with something that I found pretty troubling in what the government just said, is that it doesn't matter whether we apply the categorical approach or the modified categorical approach. And the reason I find that troubling is because of exactly what you said, your honor, about Chinnery, is that this is an error, a structural error, an error of law that the BIA has committed below. And it peeked behind the documents and looked to see what the underlying conviction was. And if you look at Mullooly, which is the decision that was referenced in our brief, the footnote that talks about Moncrief, it defines the categorical approach as a court may determine, sorry, excuse me, the modified categorical approach in footnote four. A court may determine which particular offense the noncitizen was convicted of by examining the charging documents and jury instructions, or in the case of a guilty plea, the plea agreement, plea colloquy, or some comparable judicial record. That's exactly what the government is inviting this court to do, and it's exactly what they told the BIA to do below. In this argument today, counsel for the government pointed to the charging documents, pointed to the colloquy below, and asked the court to look at the modified, to apply the modified categorical approach. And that's a structural error that should be reversed, and you should just send it back to the BIA to correct that, because the Pennsylvania statute is divisible. If you look at, excuse me one second, if you look at the statutory language itself, and in the Joy opinion, if you look at the statute for theft by deception, the offense is defined as a person is guilty of theft if he intentionally obtains or withholds property of another by deception. Those are the elements. And then it goes on to tell you different ways that deception could occur. This is exactly what happened in Mathis, where the courts gave a hypothetical statute which says an aggravating factor could be a deadly weapon, including a gun, a sword, and I'm forgetting what the actual examples are, but... That's when you're trying to figure out how the crime was committed. That's not counsel's argument, as I understand it. He's simply saying the record is quite clear that this is an A-1 offense. So you evaluate whether the least culpable conduct of A-1 constitutes a CIMT. And that's the modified categorical approach. No, well, no. The modified categorical approach is when you're trying to figure out which subsection of a divisible statute to apply. Right. But here, we don't even have to look at A-1, A-2, A-3 because the record draws our attention directly to A-1. A-2 and A-3 aren't part of the case. Well, the test to determine whether to do the categorical approach or the modified categorical approach is you start with the statute and you determine whether the Pennsylvania... Which statute? You start with the Pennsylvania theft by deception statute. No, you start with the crime of conviction. Okay. The crime of conviction... The typical modified categorical approach is a case where you've got a defendant, and usually we're looking at decades, unfortunately, decades-old state court records, right? So you've got a crime of conviction, blank, P-A-C-S, blank. And that crime of conviction may have five or six subsections. You don't know which subsection the person's been convicted of. And then you drill down to the Shepard documents to see if the record tells you which of those six subsections the person... That's our typical approach. Here, the government is saying, you don't even need to go down that road because right at the first level, we know that this person was convicted of A-1. He's admitted he was convicted of A-1. I disagree, Your Honor, respectfully. He wasn't convicted of A-1. He was convicted of theft by deception, which is under... Your Honor, what did the charging documents say he was charged with? That is immediately jumping over the entire categorical approach. What does the charging documents say he was charged with? It says 3922A1. And what did he plead guilty to? He pled guilty to the indictment, or the charging documents. It's an A-1 case. Well, I disagree. You want us to pretend that we don't know that. The record tells us that. I think that that would be... You need to show us a case that tells us that we should ignore what we know to be true. Mathis, Your Honor. Okay, all right. That's why I asked him that question. So tell us why Mathis supersedes Moncrief. Mathis tells you the exact test that you're supposed to apply, which is to look at the offense of conviction, which in this case is theft by deception. You start there. You look at the statute. You determine whether it's divisible. If it's divisible, then you can look at the separate subsections, and you can look at the charging documents below. If it's not divisible, like in this case, which is pretty clear from Joy and from the statutory language on its own, you look at what the least culpable crime is under the entire statute. Now, this is just a list of elements here. I mean, sorry, a list of means of committing it, rather than separate offenses in the subsections here. So it's just like the example in Mathis. In the hypothetical statute in Mathis, which had an aggravating factor of having a weapon, such as a gun, a knife, so on and so forth, if the charging documents had said, he committed assault with a gun, I believe that the Mathis court would have you look at the entirety of the statute and determine what the least culpable conduct was under the statute, rather than looking through the documents and basically doing an end run around the entire categorical and modified categorical approach, which is what the government is proposing today. If there's nothing further, we ask that you vacate your room. Thank you very much. Thank you, Daniel. Did you appear pro bono in this case? Yes. Okay. The court is very appreciative of your hard work and the work of your colleagues in the clinic. Thank you. And we thank you and we thank Mr. Robbins for the very helpful argument. Thank you very much.